**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARK PRICE,

       Plaintiff,

v.                                                                                No. CIV 20-1099 RB/KRS

FRANCIS WHITTEN, THADDEUS ALLEN,
and THE CITY OF LAS CRUCES d/b/a THE
LAS CRUCES POLICE DEPARTMENT,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter arises out of an argument between Mark Price and his aunt while they were together in a car. Another relative who overheard the argument via cell phone grew concerned and called the Las Cruces Police Department (LCPD) to request a welfare check. Defendant Francis Whitten, an officer with the LCPD, responded to the call and drove to Price and his aunt's home address. Officer Whitten called Price's aunt. She informed him that she argued with her nephew, he was no longer with her in the car, she was okay, and she did not want police involvement.

Whitten encountered Price in his front yard. Without confirming Price's identity, Whitten ordered Price to stop and talk, but Price ignored him. Whitten grabbed at Price, who told the officer to get off his property. Whitten said that he had a right to stay on the property, took out his taser, and commanded Price to lay on the ground. When Price refused, Whitten tased him, causing injury. Whitten arrested Price for resisting, evading, or obstructing an officer pursuant to N.M. Stat. Ann. § 30-22-1(B). The criminal case was later dismissed.

Price now alleges a variety of state and federal claims against Whitten, the City of Las

Cruces,[1] and LCPD supervisor Thaddeus Allen. Defendants move for dismissal of three claims: retaliatory arrest under the First Amendment, trespass, and violations of the New Mexico Constitution. For the reasons discussed herein, the Court will grant the motion in part.

## I.    Statement of Facts

On July 27, 2020, Mark Price and his aunt had an argument while driving together in a car. (Doc. 1 (Compl.) ¶ 12.) Price's aunt "pocket-dialed" another relative, who overheard the argument and called the LCPD for a welfare check. (*Id.* ¶¶ 13–14.) Officer Whitten responded to the call. (*Id.* ¶ 15.) "Whitten had no indication that the call involved violence" or "that any crime had been committed." (*Id.* ¶¶ 16–17.) Whitten first drove to Price's and his aunt's home address. (*Id.* ¶¶ 18–19.) He then called Price's aunt, who "did not sound upset[,]" "gave no indication there had been violence[,]" and assured him that she was okay. (*Id.* ¶¶ 19–21, 24.) The aunt informed Whitten that she was not at home and that Price was not with her in the car. (*Id.* ¶ 22.) She stated that she and Price had argued, and he can "be loud when he is angry." (*Id.* ¶¶ 22, 24.) When Whitten asked her what Price was wearing, she responded "that she did not want the police involved." (*Id.* ¶ 23.)

Whitten then saw Price, whom Whitten had not yet identified, walk to his front door. (*Id.* ¶ 25.) Whitten, who was standing in Price's front yard, ordered Price to stop and talk. (*Id.* ¶ 26.) Price ignored Whitten and continued toward the garage. (*Id.* ¶ 27.) Whitten grabbed at Price. (*Id.* ¶ 28.) Price told Whitten not to touch him and to get off his property. (*Id.* ¶¶ 29–30.) Whitten replied that he had a right to be on the property. (*Id.* ¶ 32.) He unholstered his taser and commanded Price to lie on the ground. (*Id.* ¶ 33.) Price asked why Whitten was there, and Whitten said "that

---

[1] In their motion, Defendants assert that Price "cannot maintain any 42 U.S.C. § 1983 claims against [the] LCPD, as [it] is not a 'person' within the meaning of [§] 1983 and is not a separate suable entity." (Doc. 4 at 1 n.1 (citations omitted).) Price responds that he has sued the City, which is a proper entity under § 1983. (Doc. 8 at 11 (citing *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985)).) The City does not mention this issue in its reply brief (*see* Doc. 12), and the Court finds that Price has correctly named the City, which is a suable entity under § 1983.

he was there for a 'domestic.'" (*Id.* ¶ 34.) Whitten continued to hold Price at taser point, while a second officer "drew his firearm to provide 'lethal coverage' for [Officer] Whitten." (*Id.* ¶ 36.) Whitten again told Price to get on the ground, and Price refused to comply. (*Id.* ¶¶ 37–38.) Whitten tased Price. (*Id.* ¶ 39.) One of the taser prongs hit him in the wrist and the other lodged in his testicles, requiring later removal at a hospital. (*Id.* ¶ 40, 45.) Whitten handcuffed Price on the grounds that "he was not cooperating." (*Id.* ¶ 41 (quotation marks omitted).) Allen, Whitten's supervisor, arrived on the scene after the use of force. (*Id.* ¶ 46.) Whitten told Allen about the events leading up to the use of force, and "Allen approved of . . . Whitten's plan to arrest Mr. Price and incarcerate him at the detention center." (*Id.* ¶¶ 47–48.) Whitten filed a criminal complaint charging Price with resisting, evading, or obstructing an officer pursuant to N.M. Stat. Ann. § 30-22-1(B). (*Id.* ¶ 49.)

Price stayed at the detention center "overnight until the Court released him the next day." (*Id.* ¶ 50.) The court dismissed the criminal case against Price on October 22, 2020, because Whitten failed to appear for the pretrial conference. (*Id.* ¶ 54.) Price filed this lawsuit against Whitten, Allen, and Las Cruces on October 26, 2020, and asserts that Whitten "filed the criminal complaint without probable cause." (*Id.* ¶ 51.) He maintains that Whitten "wrongfully swore in the complaint that he had been dispatched to a domestic violence call" and "intentionally omitted exculpatory information," *i.e.*, "that the Officers had no lawful authority to issue the commands or detain Mr. Price." (*Id.* ¶¶ 52–53.) Price asserts twelve claims[2] against the Defendants, only three of which are at issue in this motion to dismiss: Count 3: retaliatory arrest in violation of the First

---

[2] The remaining nine claims include: <u>Count 1</u>: unreasonable search and seizure and excessive force in violation of the Fourth Amendment; <u>Count 2</u>: prosecution without probable cause in violation of the Fourth Amendment; <u>Count 4</u>: failure to intervene; <u>Count 5</u>: a *Monell* claim for an unconstitutional custom or policy; <u>Count 6</u>: malicious abuse of process; <u>Count 7</u>: false arrest; <u>Count 8</u>: assault; <u>Count 9</u>: battery; and <u>Count 12</u>: negligent supervision, retention, and training. (Compl. at 7–12, 14)

Amendment; <u>Count 10</u>: trespass; and <u>Count 11</u>: violations of the New Mexico Constitution, including unreasonable search and seizure, excessive force, and retaliatory arrest. (*See* Compl. at 9, 12–13.)

## II.   Legal Standards

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

### B.   Qualified Immunity

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs of this analysis in either order; if the plaintiff fails to meet his burden on either prong, the defendant prevails. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied*, *Cummings v. Bussey*, 140 S. Ct. 81 (2019).

## III.   Count 3: Retaliatory Arrest

Price brings his claim for retaliatory arrest against Whitten under 42 U.S.C. § 1983.

(Compl. ¶¶ 72–76.) He asserts that Whitten had no reasonable suspicion to question him and no probable cause to arrest him for resisting, evading, or obstructing an officer under N.M. Stat. Ann. § 30-22-1(B). (*Id.*; *see also* Doc. 8.) Price further contends that Whitten arrested him because he lawfully refused to speak to Whitten and/or follow Whitten's unlawful orders, and, thus, that Whitten arrested him in retaliation for exercising his right under the First Amendment to decline to engage in a consensual encounter. (Compl. ¶¶ 72–76; Doc. 8.) Generally, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). If the plaintiff "establishes the absence of probable cause, 'then . . . [he] must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation.'" *Id.* at 1725 (quoting *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1952–53 (2018)).

The briefing on this claim is somewhat muddled. Defendants base their motion on the position that Whitten had reasonable suspicion to engage Price in an investigative detention at his home. (*See* Doc. 4 at 9–12.) They argue that Price cannot show clearly established law "that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop." (*Id.* at 12 (citations omitted).) Price responds that there was no reasonable suspicion for an investigative detention, because "even a reliable tip about an argument alone does not create reasonable suspicion of a crime without some kind of additional evidence of unlawfulness." (Doc. 8 at 5 (citations omitted).) He argues that it is clearly established in the Tenth Circuit that an officer cannot arrest an individual for refusing to answer an officer's questions during a consensual encounter; thus, Whitten is not entitled to qualified immunity. (*See* Doc. 8 at 5–6.) But this assertion touches only upon the Fourth Amendment violation and is not the appropriate inquiry for

the alleged First Amendment violation. As Defendants argue, Price's burden is to show "on-point, published, clearly established law that squarely governs the facts of this case." (Doc. 15 at 3; *see also* Doc. 12 at 4–6.) Here, the dispositive question is whether it is clearly established that an officer who arrests an individual for refusing to answer questions during a consensual encounter not only violates the Fourth Amendment, *but also* violates the *First* Amendment. Price has not cited any authority to establish that "the contours of [his right under the First Amendment were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quotation omitted). Nor has Price developed any cogent argument that Whitten's conduct here so obviously violated the First Amendment "that it is not necessary for [him] to show clearly established existing law prohibiting such conduct." *See Estate of Ceballos v. Husk*, 919 F.3d 1204, 1218 (10th Cir. 2019).[3]

The Court begins its analysis by looking at whether the facts as alleged in the Complaint are sufficient to show that Whitten lacked reasonable suspicion to detain Price and, therefore, whether Whitten lacked probable cause to arrest Price under § 30-22-1(B). The Court will then turn to the thrust of Price's claim in Count 3: whether such conduct also violated Price's First Amendment rights, and whether the law on this issue was clearly established.

### A.   Constitutional Violation

Price alleges that Whitten did not have reasonable suspicion to perform an investigative detention; therefore, Price was justified in refusing to speak with Whitten during the consensual encounter. (*See* Compl. ¶¶ 72–74.) He further alleges that Whitten did not have probable cause to

---

[3] Price argues that it is obvious an officer cannot detain a person without reasonable suspicion or arrest a person without probable cause. (*See* Doc. 8 at 5.) But he does not develop any argument to demonstrate that Whitten's conduct obviously violated the First Amendment. (*See id.*; *see also* Doc. 14-1.)

6

arrest him, but only arrested him in retaliation for his lawful refusal to respond to Whitten during the encounter in violation of the First Amendment. (*See id.* ¶ 51, 53, 72–74.) To analyze Price's claim for retaliatory arrest under the First Amendment, the Court begins by analyzing whether the Complaint adequately states a claim under the Fourth Amendment.

### 1.      Law Regarding Fourth Amendment Seizures

"For purposes of analyzing Fourth Amendment seizures, the Tenth Circuit has divided interactions between police and citizens into three categories: (i) consensual encounters; (ii) investigative stops; and (iii) arrests." *Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1051 (D.N.M.), *appeal dism.*, No. 19-2137, 2019 WL 8064625 (10th Cir. Nov. 25, 2019) (citing *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)) (subsequent citations omitted). On one end of the spectrum are consensual encounters, which "are not seizures within the meaning of the Fourth Amendment[] and need not be supported by suspicion of criminal wrongdoing." *Oliver*, 209 F.3d at 1186 (citing *Florida v. Royer*, 460 U.S. 491, 497–98 (1983)). This type of encounter occurs, for example, "when a police officer approaches a person to ask questions under circumstances where a reasonable person would feel free to refuse to answer and to end the encounter." *Ward*, 398 F. Supp. 3d at 1051 (citing *Oliver*, 209 F.3d at 1186).

"On the opposite extreme are arrests, which are 'characterized by highly intrusive or lengthy search or detention.'" *Oliver*, 209 F.3d at 1186 (quoting *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984)). An officer needs probable cause to believe that the arrestee has committed a crime to effectuate a warrantless arrest. *Id.* (citing *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). The third type of encounter rests somewhere in the middle and is known as a *Terry* stop or an investigative detention. *See id.* In this type of encounter, "[a]n officer 'can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion

supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver*, 209 F.3d at 1186). "A police-citizen encounter that is not consensual may be a constitutional investigative detention." *Ward*, 398 F. Supp. 3d at 152 (citation omitted). This occurs, for example, "when an officer stops and briefly detains a person 'in order to determine his identity or to maintain the status quo momentarily while obtaining more information.'" *Id.* (quoting *Oliver*, 209 F.3d at 1186). "The court views the totality of the circumstances to see whether the detaining officer had a 'particularized and objective basis' for suspecting legal wrongdoing." *Cortez*, 478 F.3d at 1123 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

### 2.     The Complaint alleges a Fourth Amendment violation.

Price asserts that his aunt pocket-dialed a relative, who overheard an argument between Price and his aunt and called the police to request a welfare check. (Compl. ¶¶ 13–14.) Whitten responded and had no indication that Price was violent or that a crime had been committed. (*Id.* ¶¶ 15–17.) In fact, when Whitten called Price's aunt, she informed Whitten that she had argued with Price, she was ok, and Price "can just be loud when he is angry." (*Id.* ¶¶ 19, 22, 24.) She "did not sound upset on the phone" or give any "indication there had been violence." (*Id.* ¶¶ 20–21.) Price's aunt declined to give Whitten information on what Price was wearing and informed him that she did not want police involvement. (*Id.* ¶ 23.) When Whitten first encountered Price at Price's home address, he ordered him to stop and talk without positively identifying Price. (*Id.* ¶¶ 25–26.) When Price asked Whitten why he was there, Whitten stated he was responding to a "domestic." (*Id.* ¶ 34.) He then told Price that "he was going to tase him" for not obeying his commands. (*Id.* ¶ 35.) When Price refused to lay on the ground per Whitten's order, Whitten tased and arrested Price. (*Id.* ¶¶ 37–39, 41, 44, 49.)

Whitten arrested Price for resisting, evading, or obstructing an officer under N.M. Stat. Ann. § 30-22-1(B), which criminalizes "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." (*See* Compl. ¶ 49.)

> To establish a defendant's guilt for resisting officers under New Mexico's § 30-22-1, a party must show that: (i) the officer who gave the orders was lawfully discharging his or her duty; and (ii) the defendant, with the knowledge that the officer was attempting to apprehend or arrest the defendant, fled, attempted to evade, or evaded the officer.

*Ward*, 398 F. Supp. 3d at 1106–07 (citing *New Mexico v. Gutierrez*, 162 P.3d 156, 166 (N.M. 2007)). "For an order to have been lawful, it must have rested on adequate reasonable suspicion, probable cause, and/or exigent circumstances." *Id.* at 1107 (citing *Storey v. Taylor*, 696 F.3d 987, 993 (10th Cir. 2012)). "The Supreme Court of New Mexico has stated that an officer who lacks reasonable suspicion to temporarily seize a defendant lacks the authority to detain the defendant pursuant to New Mexico's resisting statute § 30-22-1, because the defendant has a constitutional right to walk away from the encounter." *Id.* (citing *Gutierrez*, 162 P.3d at 167–68). The *Gutierrez* court explained:

> "[W]e emphasize that had the officer in this case not articulated reasonable suspicion to support detaining Defendant, or if a reasonable person would not have understood he was not free to leave, Defendant could not then be punished for evading and eluding an officer simply because he exercised his constitutional right to walk away from the officer and end the encounter."

*Id.* (quoting *Gutierrez*, 162 P.3d at 168).

"In interpreting the New Mexico statute's lawful discharge element in relation to probable cause, accordingly, the Tenth Circuit has held that an officer must issue a lawful order before that officer has probable cause to arrest pursuant to the statute." *Id.* (citing *Storey*, 696 F.3d at 993 & n.6; *United States v. Romero*, No. CR 17-2190 KG, 2018 WL 1896551, at *7 (D.N.M. Apr. 19,

2018), *rev'd on other grounds*, 935 F.3d 1124 (10th Cir. 2019)). In other words, the Tenth Circuit has found that an arrest under § 30-22-1 is "justified . . . where the defendant has refused to comply with an officer's command, but only under circumstances where the command precipitating the arrest was 'actually lawful.'" *Romero*, 2018 WL 1896551, at *7 (quoting *Youbyoung Park v. Gaitan*, 680 F. App'x 724, 733 (10th Cir. 2017)). In this case, the Court finds that the Complaint adequately establishes that Whitten's orders to Price were not lawful.

In *Ward*, a municipal police department received a 911 call from a woman who reported that her neighbors were fighting. *Ward*, 398 F. Supp. 3d at 1013. When asked if the incident was physical, the woman said it was not, but that a man was yelling at a woman. *Id.* Officers responded to a report from dispatch of "a domestic" between a male and female. *Id.* at 1014. When the officers approached the house, they neither saw nor heard anything that caused them concern. *See id.* at 1015. Through a screen door, the officers saw two occupants of the home (Ward and Hargrove) in a garage area. *See id.* at 1016. One of the officers asked the occupants if everything was okay, and they replied that "no domestic violence had occurred" and that the officers could leave. *Id.* at 1016–17. The officers refused to leave and issued several orders to the pair. *See id.* at 1017–18. When Ward and Hargrove tried to retreat into the house, the officers entered the garage and arrested them for resisting, evading, or obstructing under an analogous state statute. *See id.* at 1017–21, 1106. In analyzing the plaintiffs' § 1983 claim for unlawful arrest, the district court found that the officers "had only the 911 call to suggest that Hargrove had committed domestic violence[,]" but "given the lack of evidence suggesting domestic violence when the [o]fficers arrived and throughout the encounter," along with the plaintiffs' denials "that any violence had occurred, the 911 call [did] not suffice as grounds on which a reasonable person could believe that Hargrove or Ward were involved in domestic violence." *Id.* at 1109.

10

Similarly, here, Whitten had information from dispatch that Price and his aunt had argued. He did not have any information that there had been violence or that a crime had been committed. Price's aunt told him that she did not want police involvement. While Whitten approached Price at Price's home address, there is no information in the Complaint to establish that Whitten had a "particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quotation marks and citation omitted). Given that the call to dispatch was the only evidence that domestic violence had occurred, and considering that Price's aunt denied any violence and there are no facts to show that Whitten had cause for concern when he saw Price, the Court finds that the phone call alone "does not suffice as grounds on which a reasonable person could believe that [Price was] involved in domestic violence" or any other crime. *See Ward*, 398 F. Supp. 3d at 1109.

Because Whitten did not have reasonable suspicion to detain Price, he also did not have probable cause to arrest him, given that Price did not resist any lawful orders. *See id.* at 1110; *Romero*, 2018 WL 1896551, at *7. Notably, Defendants never mount any argument to establish that Whitten had reasonable suspicion to detain Price or probable cause to arrest him. (*See* Doc. 12.) Accordingly, the Court finds that Price has adequately alleged that Whitten's seizure and arrest of Price violated the Fourth Amendment.

### 3.     The Complaint adequately alleges a First Amendment violation.

Under *Nieves*, once a plaintiff establishes that the officer lacked probable cause for an arrest, then he "must show that the retaliation was a substantial or motivating factor behind the [arrest] . . . ." *Nieves*, 139 S. Ct. at 1725. Price alleges that Whitten arrested Price because "Price was exercising his First Amendment right to not speak with the officers . . . ." (Compl. ¶ 74.) Defendants do not contest this fact, and the Court finds that Price has adequately alleged that Whitten would not have arrested Price but for Price's exercise of his right not to speak with the

officer. *See Nieves*, 139 S. Ct. at 1722, 1725. Without further argument from Defendants, the Court finds that Price has made out a constitutional violation.

**B.      The law on Price's First Amendment retaliatory arrest claim was not clearly established.**

The Court next examines whether the law is clearly established such that a reasonable officer would know that s/he violates the First Amendment by arresting a person under § 30-22-1(B) who refuses to comply with orders issued during a consensual encounter. Price cites to several cases to show that the law on this issue was clearly established, but each falls short of the relevant standard. The Supreme Court has opined that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Instead, it "must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Anderson*, 483 U.S. at 639).

Price relies heavily on the Tenth Circuit's unpublished decision in *Esparza v. Bowman*, 523 F. App'x 530 (10th Cir. 2013). (*See* Docs. 8 at 5–7; 14-A at 2.) In that case, the plaintiff (Esparza) had publicly criticized the police chief. *See Esparza*, 523 F. App'x at 531. Later, the chief responded to a call regarding a possible verbal altercation between Esparza and others. *See id.* The chief arrived at the scene and saw Esparza "yelling at a group of men as she walked to her car." *Id.* The chief approached Esparza, now in her car, and directed her to speak to him. *Id.* at 532. He warned her that he "would arrest her if she left." *Id.* Confused, Esparza left and later called the police dispatcher to report the incident. *See id.* The chief spoke to others at the scene and concluded that "there was insufficient evidence to arrest anyone for fighting." *Id.* Two days later,

he obtained a warrant for Esparza's arrest under § 30-22-1 on the basis that "she could have been a witness to a potential fight" but left in violation of his instructions. *Id.* Esparza sued, alleging violations of her First and Fourth Amendment rights, among others. *See id.* at 533–37. The Tenth Circuit found that the police chief did not have reasonable suspicion to detain Esparza for disorderly conduct. *Id.* at 534. Consequently, he did not have probable cause to arrest her under § 30-22-1. *Id.* at 535.

With respect to Esparza's claim under the First Amendment, she claimed that the chief "violated her First Amendment rights by arresting her in retaliation for her complaints to city officials" about his earlier conduct. *Id.* The Tenth Circuit found that her complaints were protected activity, and her "First Amendment right to be free from" arrest in retaliation for her speech regarding the chief's prior conduct was clearly established. *Id.* at 536. *Esparza* is distinguishable from the facts here, however, because Price has not claimed that Whitten arrested him for any prior critical speech, but for exercising his right to leave a consensual encounter.

Price discusses *Koch v. City of Del City*, which affirmed that "[t]he First Amendment not only protects an individual's right to speak, it also protects an individual's right *not* to speak." 660 F.3d 1228, 1243 (10th Cir. 2011) (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). As Price points out, however, *Koch* is distinguishable, as the Tenth Circuit found that the incident there involved a lawful investigative detention. (*See* Doc. 8 at 7–8 (discussing *Koch*, 660 F.3d at 1240– 46).) Moreover, the plaintiff in *Koch* was arrested pursuant to a court order, and there was no charge brought under § 30-22-1(B). *See Koch*, 660 F.3d at 1233–34.

Price further states that *Craft v. Wright*, 426 F. Supp. 3d 978 (D.N.M. 2019), *rev'd by* 840 F. App'x 372 (10th Cir. 2021), "clearly establish[es] the right to be free from First Amendment retaliatory arrests." (Doc. 14-1 at 3.) In that case, the plaintiff (Craft) regularly preached in an area

designated as a public forum. *Craft*, 426 F. Supp. 3d at 984. One day while preaching, Craft was confronted by another individual, and there was a physical altercation. *Id.* at 984–85. Craft recorded the incident. *Id.* at 984. Police responded and interviewed the parties and witnesses. *Id.* at 986–87. Craft informed the police that the incident was recorded, but the police did not view the video. *Id.* at 987. Pursuant to a warrant, police arrested Craft about a week later and charged him with third-degree felony aggravated battery and disorderly conduct, but the charges were later dismissed. *Id.* at 988–89. Craft filed suit and claimed, in relevant part, a violation of his First Amendment rights and alleged that the warrant "and prosecution were in retaliation for his exercising his rights of free speech and religion . . . ." *See id.* at 1002. The court analyzed his claim as one for either retaliatory prosecution or arrest. *See id.* at 1002–04. The district court found that the police did not have probable cause for the arrest and were not entitled to qualified immunity on the First Amendment claim. *See id.* Notwithstanding the fact that the Tenth Circuit has reversed the district court's decision that Price relied on, *see* 840 F. App'x 372, the Court finds that *Craft* is distinguishable and does not provide the clearly established law Price needs. Craft's retaliation claim was premised on the exercise of his rights of free speech and religion, while Price's claim is premised on his right not to speak to police during a consensual encounter.

Price cites several cases to establish that Whitten did not have reasonable suspicion to detain him. (*See* Doc. 8 at 4–7 (citing *Navarette v. California*, 572 U.S. 393, 401 (2014); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Arvizu*, 534 U.S. at 273; *Royer*, 460 U.S. at 497–98 (discussing that an individual involved in consensual encounter may decline to speak with police and leave); *Florida v. Bostick*, 501 U.S. 429, 433–34 (1991) (same); *Corona v. Aguilar*, 959 F.3d 1278, 1282–85 (10th Cir. 2020); *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) (finding officers who arrested plaintiff for violating § 30-22-1(B) without probable cause were not entitled to qualified

immunity for unlawful arrest in violation of Fourth Amendment); *Hopkins v. Bonvicino*, 573 F.3d 752, 771 (9th Cir. 2009); *United States v. Hollinquest*, 444 F. App'x 118, 119–20 (9th Cir. 2011)).) But these cases do not involve plaintiffs who brought claims for retaliatory arrest under the First Amendment and cannot demonstrate that the law is clearly established on the dispositive issue.

And the cases Price cites that do involve the First Amendment are so obviously distinguishable that they are also insufficient to demonstrate that the law was clearly established that an officer violates the First Amendment by arresting a person under § 30-22-1(B) for failing to comply with orders during a consensual encounter. (*See id.* at 4–5 (citing *Gooding v. Wilson*, 405 U.S. 518, 520 (1972) (holding a state statute unconstitutional that criminalized the use of "opprobrious language"); *Cohen v. California*, 403 U.S. 15, 16 (1971) (plaintiff arrested for "wearing a jacket bearing the words 'Fuck the Draft'"); *Terminiello v. City of Chicago*, 337 U.S. 1, 3 (1949) (plaintiff arrested for making a public speech critical of certain protesters and political and racial groups); *Edmonds v. Cty. of Taos*, No. CV 04-1406 JP/DJS, 2005 WL 8163563, at *4 & n.6 (D.N.M. Aug. 19, 2005) (plaintiff stated valid retaliation claim against officers who arrested him for disorderly conduct but did not have reasonable suspicion to detain him, where plaintiff had publicly criticized sheriff's department)).)

In short, Price has not met his burden to cite to authority that would "make the unlawfulness of the officer['s] actions apparent." *McInerney v. King*, 791 F.3d 1224, 1236–37 (10th Cir. 2015) (citations omitted). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* at 1237 (quoting *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011)). "Accordingly, it is not enough to simply assert that" an individual has the right to be free from arrest for refusing to answer an officer's questions during a consensual encounter. *See id.* (quoting *Anderson*, 483 U.S. at 640). Instead, the Court

15

must consider whether it is clearly established that an officer violates an individual's First Amendment rights by arresting the individual under § 30-22-1(B) for failing to answer questions during a consensual encounter. *See id.* Price has failed to produce clearly established authority on this question, and Whitten is entitled to qualified immunity on Count 3.

**IV.    Counts 10 and 11: Trespass and Violations of the New Mexico Constitution**

In Counts 10 and 11, Price brings claims under the New Mexico Tort Claims Act (NMTCA). The NMTCA "provides that '[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978.'" *Trujillo v. Salazar*, No. CIV-04-0689 JB/WDS, 2006 WL 1228827, at *5 (D.N.M. Mar. 1, 2006) (quoting N.M. Stat. Ann. § 41-4-4(A) (1978)). "A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed in the NMTCA." *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1193 (D.N.M. 2013) (citing *Begay v. New Mexico*, 723 P.2d 252, 256 (N.M. Ct. App. 1985), *rev'd on other grounds by Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986) ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act.")).

In Count 10, Price asserts that "Whitten intentionally and without legal justification physically invaded Mr. Price's property and refused to leave when he was told to leave by Mr. Price." (Compl. ¶ 97.) In Count 11, he alleges that Whitten violated his state constitutional rights to be free from illegal search and seizure, excessive force, and retaliatory arrest. (*Id.* ¶ 100.) Defendants argue that there are no waivers for these claims. (*See* Doc. 4 at 12–17.) "Section 41-4-12 of the NMTCA provides a waiver of immunity for enforcement officers' negligence or

intentional conduct in causing certain specified torts." *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1142 (D.N.M. 2012) (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1096 (10th Cir. 2006)). This section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12. To state a claim under § 41-4-12, "a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *Glover*, 899 F. Supp. 2d at 1142 (quoting *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1316 (N.M. 1996)).

## A.      Count 10: Trespass

Price asserts that Whitten committed the tort of trespass by remaining on his property after Price asked him to leave. (*See* Compl. ¶ 97.) "Restatement (Second) of Torts provides that one is subject to liability to another for trespass if he or she intentionally enters or remains on land in the possession of the other." *Kerns v. Bd. of Comm'rs of Bernalillo Cty.*, No. CIV 07-0771 JB/ACT, 2009 WL 3672877, at *10 (D.N.M. Oct. 5, 2009) (citing Restatement (Second) of Torts § 158 (1965)). Defendants argue that "[t]he New Mexico Supreme Court has ruled that there is *no* waiver of immunity for trespass claims." (Doc. 4 at 13 (citing *Townsend v. New Mexico ex rel. State Highway Dep't*, 871 P.2d 958 (N.M. 1994)).) In *Townsend*, the plaintiff brought claims for trespass and conversion under the NMTCA against the New Mexico state highway department and its commissioner of public lands. 871 P.2d at 959. The state supreme court dismissed the case,

because "trespass and conversion are not torts for which immunity has been waived by the [NMTCA]." *Id.* at 960 (citing N.M. Stat. Ann. §§ 41-4-5–12). It is true that the NMTCA does not waive immunity for trespass claims against governmental entities or employees in §§ 41-4-5–11. The plaintiff in *Townsend*, however, was not bringing claims against law enforcement officers under § 41-4-12. *See id.*

Price asserts that § 41-4-12 specifically waives immunity for injuries or damages resulting from the "violation of property rights . . . when caused by law enforcement officers while acting within the scope of their duties." (Doc. 8 at 9 (quoting N.M. Stat. Ann. § 41-4-12).) At least two judges in this district have examined § 41-4-12 in light of *Townsend* and found in favor of Price's position. In *Armijo v. Village of Columbus*, the defendants included the Border Operations Task Force (BOTF), "a federally-funded task force made up of local law enforcement agencies and Immigrations and Customs Enforcement." No. 08-CV-935 MV/WPL, 2011 WL 13174491, at *1 (D.N.M. May 4, 2011). The BOTF, citing *Townsend*, moved for summary judgment on the plaintiff's state law claim for conversion on the basis that immunity is not waived under the NMTCA. *Id.* at *10. United States District Judge Martha Vázquez found that the BOTF defendants "fail[ed] to address the waiver set forth in § 41-4-12 of the [NMTCA], which . . . waive[s] immunity for conversion by law enforcement officers while acting within the scope of their duties . . . ." *Id.* at *10–11. Accordingly, the Court denied the BOTF's motion. *Id.* Chief United States District Judge William P. Johnson made a similar finding in *Miller v. Yard*, No. CIV-09-1124 BB/WPL, 2012 WL 13081440, at *20 (D.N.M. Feb. 27, 2012).[4]

---

[4] Other cases from this district and the Tenth Circuit have allowed plaintiffs to maintain claims for trespass against law enforcement officers under § 41-4-12. *See, e.g.*, *Lundstrom v. Romero*, 616 F.3d 1108, 1129 (10th Cir. 2010); *Kerns*, 2009 WL 3672877, at *10; *cf. Hita v. Stansell*, No. CV 05-1088 LFG/LCS, 2006 WL 8443323, at *22 (D.N.M. Nov. 2, 2006) (finding that although plaintiff could bring claim against law enforcement officers under § 41-4-12, claim would be dismissed because officers had a right to be on plaintiff's property).

Defendants observe that there has been some confusion regarding *Townsend*'s holding and cite three cases that have reached the opposite conclusion. (Doc. 4 at 13–14 (citing *Bress v. Albuquerque Police Officers*, CV 10-1250 RB/DJS, 2011 WL 13285711, at *5 (D.N.M. May 5, 2011); *Barreras v. Rosser*, No. CV 06-1008 RB/LAM, 2007 WL 9710115, at *11 (D.N.M. Oct. 26, 2007); *Martinez v. N.M. Dep't of Pub. Safety*, No. D-101-CV-2016-02178, Order on Defs.' First Mot. to Dismiss (1st Jud. Dist. June 14, 2017)); *see also* Doc. 4-1.) The cases are not binding authority, and the Court finds them unpersuasive. In *Bress*, the court repeated *Townsend*'s holding in dicta, but it found for the defendant on the trespass claim because the law enforcement officer "was lawfully authorized to be on the property." *See* 2011 WL 13285711, at *5. In *Barreras*, the court also cited to *Townsend* in granting summary judgment on the plaintiff's trespass claim. *See* 2007 WL 9710115, at *11. The Court notes, however, that the plaintiff did not counter the defendants' argument regarding the trespass claim, thereby waiving the claim. (*See Barreras*, No. CV 06-1008, Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. (D.N.M. Sept. 7, 2007).) Finally, in *Martinez*, while the state district court granted a motion to dismiss the trespass claim, the court's order offers no reasoning for the order and does not cite *Townsend* as authority. (*See* Doc. 4-1.)

 Ultimately, the Court finds that *Townsend*'s holding, given in the context of a claim brought against a governmental entity that was *not* a law enforcement officer and therefore not subject to § 41-4-12, does not override the specific waiver outlined in § 41-4-12. Defendants' motion will be denied with respect to Count 10.

### B.      Count 11: State Constitutional Claims

In Count 11, Price alleges that Defendants violated his "analogous civil rights under the New Mexico Constitution[;]" that is, his rights to be free from illegal search and seizure, excessive force, and retaliatory arrest. (Compl. ¶ 100.) Defendants argue that Price may not bring these

claims under the NMTCA. (Doc. 4 at 14-15.) "Unlike federal law, New Mexico has no statute analogous to § 1983 that would provide for damages against government entities or their officials for past violations of state statutes or the state Constitution." *Carter v. City of Las Cruces*, 915 P.2d 336, 340 (N.M. Ct. App. 1996) (citing § 41-4-12). The New Mexico Court of Appeals, faced with a claim for "violation of civil rights arising under the New Mexico Constitution[,]" stated that, "[i]n the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." *Barreras v. State of N.M. Corr. Dep't*, 62 P.3d 770, 772, 776 (N.M. Ct. App. 2002) (gathering cases). Accordingly, it upheld the dismissal of the claim. *Barreras* did not, however, deal with a claim for violation of civil rights under § 41-4-12 against law enforcement officers and is, therefore, inapposite. *See id.*

Price contends that "[t]he rights set forth in article II, section 10 are similar to the enumerated torts of assault, battery, false arrest, malicious prosecution, abuse of process, and violation of property rights set forth in 41-4-12," and are thus implicitly included in that waiver. (Doc. 8 at 11 (quoting *Schinagel v. City of Albuquerque*, No. CV 07-481 LH/RLP, 2008 WL 11399610, at *5 (D.N.M. Sept. 9, 2008)).) It does not appear that the New Mexico Supreme Court, Court of Appeals, or the Tenth Circuit have explicitly addressed the issue of whether a plaintiff can bring a claim pursuant to § 41-4-12 for violations of rights under article II. And cases within this district have gone both ways in analyzing similar claims. *See, e.g.*, *Smith v. City of Hobbs*, No. 19CV00796 JCH/SMV, 2021 WL 1614644, at *3 (D.N.M. Apr. 26, 2021) (noting that the court in *Schinagel* "presumed that New Mexico waives immunity for a cause of action brought under Article II, Section 10") (citations omitted); *Lewis v. Sandoval*, No. CV 09-0136 KBM/WDS, 2009

WL 10675509, at *2 (D.N.M. Oct. 31, 2009) (declining to allow amended complaint that included a claim under § 41-4-12 for violation of rights under article II, section 10); *Reynolds v. Bd. of Comm'rs of the Cty. of Lincoln, N.M.*, No. CIV 00-168 LFG/RLP, 2000 WL 36739562, at *2 (D.N.M. Sept. 15, 2000) ("An amendment to include a claim for violation of Reynolds' state constitutional rights by law enforcement officers would be futile, because it does not appear that New Mexico courts allow such claims.").

The New Mexico Court of Appeals has stated that "absent a waiver of immunity under the [NMTCA], a person may not sue the state for damages for violation of a state constitutional right." *Ford v. New Mexico Dep't of Pub. Safety*, 891 P.2d 546, 553 (N.M. Ct. App. 1994) (citing *Begay*, 723 P.2d at 257 (alleged violation of Article II, Section 11, which grants freedom of religion, dismissed because the claim is not included in the NMTCA's waivers)); *accord Lucero v. Salazar*, 877 P.2d 1106, 1107 (N.M. Ct. App. 1994) (finding no waiver of immunity under § 41-4-12 for violation of right under article II, section 4 of New Mexico Constitution, as a "[w]aiver of immunity based on such constitutional grounds would emasculate the immunity preserved in the [NMTCA]") (quotation omitted). The *Ford* court went on to explain that while "the legislature cannot eliminate or limit a constitutional right, it need not provide a damage remedy for a violation of that right." *Id.* The Court finds this reasoning instructive.[5] As Price has not pointed to binding authority to support his position that the NMTCA specifically waives immunity for violations of rights secured under article II, section 10, the Court finds Count 11 should be dismissed. Moreover, because Price acknowledges that Count 11 is essentially the same as his other claims for assault

---

[5] The Court also finds persuasive Defendants' discussion of the New Mexico Civil Rights Commission, created in 2020 to investigate the enactment of a state Civil Rights Act analogous to 42 U.S.C. § 1983. *See* N.M. Civil Rights Commission's Report, https://www.generalservices.state.nm.us/wp-content/uploads/New-Mexico-Civil-Rights-Commission-Report.pdf (Nov. 20, 2020). The Commission noted that "New Mexico still does not have a statute that allows the victims of state constitutional violations to recover in court." *Id.* at 4.

(Count 8), battery (Count 9), false arrest (Count 7), malicious abuse of process (Count 6), and trespass (Count 10), it appears that Count 11 is duplicative. For these reasons, the Court will grant Defendants' motion and dismiss Count 11.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Dismissal of Plaintiffs' Retaliation, Trespass, and State Constitutional Claims & Memorandum in Support Thereof (Doc. 4) is **GRANTED IN PART** and Counts 3 and 11 are **DISMISSED**. The motion is otherwise **DENIED** and Count 10 remains;

**IT IS FURTHER ORDERED** that Price's Motion for Leave to File Sur-reply is **GRANTED** (Doc. 14).

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE