UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARK PRICE,

    Plaintiff,

v.                                                                                          No. 2:20-cv-01099-DHU-KRS

FRANCIS WHITTEN, THADDEUS ALLEN,
and THE CITY OF LAS CRUCES d/b/a THE
LAS CRUCES POLICE DEPARTMENT,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds ("Defendants' Motion") (Doc. 80). On September 25, 2023, the Court heard oral argument on the motion.[1] The Court, having carefully reviewed the motion, briefs, evidence, applicable law, and the parties' arguments, concludes that Defendants' Motion will be denied.

**I.
PROCEDURAL HISTORY**

Plaintiff filed a Complaint on October 26, 2020, naming as defendants Officer Francis Whitten, Sergeant Thaddeus Allen, and The City of Las Cruces d/b/a The Las Cruces Police Department (LCPD). *See* 10/26/20 Complaint for Civil Rights Violations and State Tort Claims (Doc. 1) ("Complaint"). The Complaint alleges, among other things, that Plaintiff's constitutional rights under the Fourth Amendment were violated when, during a welfare check following a report

---

[1] The Court also heard argument on Plaintiff's Motion for Summary Judgment on Count I & Count II of Plaintiff's Complaint for Civil Rights Violations and State Tort Claims ("Plaintiff's Motion") (Doc. 72), which the Court denied by oral ruling, concluding that disputed issues of fact precluded summary judgment in Plaintiff's favor. (Doc. 164).

1

about an argument between Plaintiff and his aunt, Defendant Whitten, a police officer with Defendant City of Las Cruces, detained him without reasonable suspicion, seized him without probable cause, and then used excessive force against him by tasing him in his genitals and hand. Plaintiff further alleges that he was later prosecuted without probable cause after Defendant Whitten included false information in his sworn criminal complaint.

In August 2021, the Honorable Judge Brack denied Defendants' Motion to Dismiss based on Qualified Immunity, finding that Plaintiff had sufficiently alleged Officer Whitten detained, seized, and arrested him in violation of the Fourth Amendment. *See* 8/18/21 Memorandum Opinion and Order at 11 (Doc. 24). Thereafter, this case was transferred to the undersigned. (Doc. 41). In the motion now before the Court, filed after the completion of discovery, Defendants again move the Court to dismiss Plaintiff's entire Complaint, in part based again on the argument that Defendant Whitten is entitled to qualified immunity.

## II.
## LEGAL STANDARD

"Because of the underlying purposes of qualified immunity, [the Tenth Circuit] review[s] summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). That burden requires a plaintiff to show that the state official "(1) [] violated a federal statutory or constitutional right, and (2) the unlawfulness of [the official's] conduct was clearly established at the time." *District of Columbia v. Wesby*, ––– U.S. –––, 138 S. Ct. 577, 589 (2018) (internal quotations and citations omitted).

For a right to be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff can demonstrate that a constitutional right is clearly established by references to on-point cases from the Supreme Court, the Tenth Circuit, or the clearly established weight of authority from other circuits. *See Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). A case need not be directly on point for a right to be clearly established because fact-to-fact comparison is not required when distinctions in the facts make no constitutional difference. *See Kerns v. Bader*, 663 F.3d 1173, 1186-87 (10th Cir. 2011). Instead, all that is required is "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). In the absence of a case directly on point, the Court requires that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Quinn v. Young*, 780 F.3d 998, 1004-5 (10th Cir. 2015) (citation omitted). The Supreme Court has warned that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, courts have adopted "a sliding scale to determine when law is clearly established. The more egregious the conduct is in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*.

In reviewing a summary judgment motion based on qualified immunity, the court views the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation omitted). The threshold inquiry in the qualified immunity analysis is whether, taking a plaintiff's allegations as true, the officer in question violated the

3

plaintiff's constitutional rights. *See Walker v. City of Orem*, 451 F.3d 1139, 1145 (10th Cir. 2006). If the plaintiff carries his burden on qualified immunity, the burden shifts to the defendant to show that there are no genuine factual issues and he is entitled to judgment as a matter of law. *Albright*, 51 F.3d at 1535 (10th Cir. 1995).

## III.
## FACTUAL BACKGROUND[2]

On July 27, 2020, Plaintiff's aunt, Lorenza Ledesma, inadvertently "pocket dialed" a relative, Kristine Ledesma, who overheard a verbal argument between Plaintiff and his aunt. Defs.' Mot., Undisputed Fact ("UF") ¶ 1, Doc. 80. Kristine called 911 and requested that law enforcement perform a welfare check on Lorenza. Pl.'s Resp. ¶ 2, Doc. 99. Kristine told the 911 Operator that she was not present for the argument. Pl.'s Resp., Undisputed Material Facts ("PUMF") ¶ A, Doc. 99. Kristine did not report any criminal violation by Plaintiff, nor did she report that Plaintiff had threatened or hurt Lorenza. *Id*. In response to Kristine's 911 call, Defendant Whitten was dispatched to Plaintiff and Lorenza Ledesma's home address for a welfare check on Lorenza Ledesma. *Id*. ¶ B.

Prior to his arrival at Plaintiff and Lorenza Ledesma's shared residence, Defendant Whitten spoke with Kristine Ledesma on the phone. *Id.* ¶ C. Defendant Whitten did not ask Kristine Ledesma any investigative questions to determine what, if any, crime she believed was being committed by Plaintiff and Kristine did not make any statement indicating that Plaintiff had threatened Lorenza, hurt Lorenza, or committed any other crime. *Id.* ¶ D. Upon arrival to the

---

[2] Some of the facts in this matter are undisputed. Where a dispute of fact exists, the Court construes the facts in the light most favorable to the nonmoving party, in this case, Plaintiff Price. In addition, for purposes of determining whether Defendant Whitten violated Plaintiff's constitutional rights, the Court takes Plaintiff's allegations as true. *See Tolan*, 572 U.S. at 657; *Walker*, 451 F.3d at 1145.

address, Defendant Whitten had no indication that Plaintiff was violent or that that Plaintiff had committed a crime. *Id.* ¶ E. Nevertheless, when Defendant Whitten arrived at Lorenza and Plaintiff's address, he made the "determin[ation] that it was going to be a domestic disturbance, or it could potentially be a domestic disturbance that [he] was going to be investigating rather than just a welfare check." *Id.* ¶ F.

Seeing that no one was home, Defendant Whitten called Lorenza Ledesma and spoke with her by phone. *Id.* ¶ G. During the call, Lorenza told Whitten she and Plaintiff had argued in the car, Plaintiff left the car and went walking, and she confirmed she was "okay" three times. *Id.* ¶ H. Lorenza told Defendant Whitten that she did not want to be involved. *Id.* ¶ I. Defendant Whitten did not ask Lorenza if Plaintiff had threatened or hurt her, or if he was violent. *Id.* ¶ H. There was no indication from Lorenza that Plaintiff had committed a crime. *Id.* ¶ K. Lorenza specifically told Defendant Whitten that she did not want police involvement. *Id.* ¶ L.

Defendant Whitten then decided that his further presence was necessary to determine if there was additional missing information regarding a "domestic disturbance." *Id.* ¶ M. Defendant Whitten asked no investigative questions at any time of Lorenza prior to his encounter with Plaintiff. *Id.* ¶ N. Not only did Defendant Whitten not ask any investigative questions of the subject of his welfare check, but the information Defendant Whitten learned from Lorenza provided no evidence that a crime had been or was being committed by Plaintiff. *Id.* Defendant Whitten explicitly ignored the information he was provided about the verbal argument and instead, followed his "hunch," stating the inflection of Lorenza's voice concerned him and he believed she didn't "really give any information regarding what was happening between her and Price." *Id.* ¶ O.

5

Defendant Whitten interrupted his conversation with Lorenza, and abruptly ended his phone call with her, when he saw a male individual approach the residence on foot and he asked the individual if he was Price. *Id.* ¶ P. Lorenza's statement to Defendant Whitten that Plaintiff "went walking," she was alone, and was "okay" was corroborated when Price walked up to the residence. *Id.* ¶ Q. The individual, who was Mark Price, did not respond to Defendant Whitten and continued to walk to the front door of the home. *Id.* ¶ R. As Plaintiff walked past Defendant Whitten, Defendant Whitten grabbed for Plaintiff's body, in a non-consensual attempt to detain him, because Plaintiff did not interact with Defendant Whitten. *Id.* ¶ S. After the incident, Defendant Whitten told his supervisor, Defendant Sergeant Allen, that he grabbed Plaintiff because he (Defendant Whitten) didn't know what he had (against Plaintiff). *Id.* ¶ T. Defendant Whitten admits Price did not exhibit any pre-fight indicators prior to Whitten's attempts to grab him. *Id.* ¶ U. Defendant Whitten did not inform Plaintiff that he was investigating a crime, that Plaintiff was suspected of a crime, or that Plaintiff was being detained or arrested. *Id.* ¶ V.

Without positively identifying the male as Mr. Price, Defendant Whitten ordered him to stop. *Id*. ¶ W. Defendant Whitten then threatened to tase Plaintiff. *Id.* ¶ X. Plaintiff asked Defendant Whitten why he was going to tase him and Defendant Whitten remained silent. *Id*. ¶ Y. Officers Whitten and Balderamma did not use any de-escalation techniques at any time with Plaintiff. *Id*. ¶ Z.

Defendant Whitten pulled out his taser and pointed it at Plaintiff. *Id.* ¶ AA. Plaintiff, with his arms raised at his sides, again asked Defendant Whitten, "What are you going to tase me for?" *Id*. ¶ BB. Defendant Whitten instructed Plaintiff to lay down. *Id.* ¶ CC. Plaintiff responded that he did not have any weapons. *Id.* ¶ DD. Defendant Whitten told Plaintiff to get on the ground. *Id*. ¶ EE. Plaintiff raised his hands into the air and again told Defendant Whitten that he did not

6

have any weapons. *Id*. ¶ FF.  Plaintiff, referring to Defendant Whitten as "Sir," told him that he was going to get his phone from his pocket to record the encounter. *Id*. ¶ GG.  Plaintiff asked Defendant Whitten why he [Defendant Whitten] was there and Defendant Whitten stated that he was responding to a "domestic." *Id*. ¶ HH.  Defendant Whitten ordered Plaintiff to the ground and threatened that "he was going to tase him" for not obeying his commands. *Id*. ¶ JJ.  Plaintiff pled with Defendant Whitten "I'm not even being violent." *Id*. ¶ KK.  At all times, during the encounter, Price was non-violent. *Id*. ¶ LL.  Plaintiff, with his arms raised in the air above his head, advised Defendant Whitten that he was moving into the street so he could "have witnesses." *Id*. ¶ NN.  Shortly thereafter, and within moments of Defendant Whitten's threat to tase Plaintiff, Las Cruces Police Department Officer Balderrama arrived, immediately pulled out his firearm, and pointed it directly at Plaintiff. *Id*. ¶ OO.  Plaintiff was 25 feet away from Defendant Whitten at this point. Pl.'s Resp. ¶ 11.

Officer Balderrama later confirmed that Plaintiff was not making fists, was not threatening, nor was Plaintiff doing anything that made him believe Plaintiff was a trained fighter or martial artist. PUMF ¶ MM.  Additionally, Officer Balderrama stated that he did not see any bulges on Plaintiff, he did not reasonably believe that Plaintiff had a gun, and it did not look like Plaintiff was going to fight anyone. *Id*.

Upon seeing Officer Balderrama's drawn gun, Plaintiff exclaimed, "He has a gun! He has a gun!" *Id*. ¶ PP.  Defendant Whitten then tased Plaintiff for thirteen (13) seconds, which required engaging his taser for three (3) cycles; one of the taser prongs attached to Plaintiff's genitals. *Id*. ¶ QQ.  Defendant Whitten was trained to avoid the groin of his target when using a taser. *Id*. ¶ RR.  Prior to tasing Plaintiff, Defendant Whitten never told Plaintiff that he was under arrest. *Id*. ¶ SS.  When Defendant Whitten tased Plaintiff, he did not know if a crime had been committed.

7

*Id*. ¶ TT.  Immediately after the tasing, Plaintiff was arrested.  *Id*. ¶ UU.  As Defendant Whitten handcuffed Plaintiff, he told him that he was being handcuffed because he "was not cooperating." *Id*. ¶ VV.  Plaintiff did not fail to obey any lawful orders. *Id*. ¶ WW.  Plaintiff did not physically resist the officers.  *Id*. ¶ XX.

During Defendant Whitten's post-tasing investigation, Lorenza Ledesma arrived at her residence and again told Defendant Whitten that Plaintiff was not violent, stating "he is not physically abusive." *Id.* ¶ YY.  Lorenza said Price had suffered a panic attack that morning. *Id.*

Defendant Whitten filed a Criminal Complaint against Plaintiff in Dona Ana County Magistrate Court that same day, on July 27, 2020, charging him with resisting, evading, or obstructing an officer, in violation of N.M. Stat. Ann § 30-22-1(B), which criminalizes "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." *Id.* ¶ BBB.  Defendant Whitten swore in the Criminal Complaint that he had been dispatched to a "domestic" call. *Id.* ¶ CCC.  The criminal case against Plaintiff was dismissed on October 22, 2020, because Defendant Whitten failed to appear for the pre-trial conference. *Id.* ¶ 54.

## IV.
## DISCUSSION

Defendants move for summary judgment on all remaining counts of Plaintiffs' Complaint.[3] Defendants assert qualified immunity as to Count 1 regarding the detention, seizure and force used against Plaintiff.  Regarding Count 2, Defendants argue Defendant Whitten's prosecution of

---

[3] The Court previously dismissed Counts 3 and 11 of the Complaint, so those claims are no longer at issue. Doc. 24.

8

Plaintiff did not violate the Fourth Amendment and thus they are entitled to summary judgment on that claim. As to the remaining counts, Defendants raise various arguments, which the Court considers below.

### A. Defendants' Motion for Qualified Immunity as to Count 1 of Plaintiff's Complaint.

In Count I of his Complaint and subsequent briefing and argument on the issue, Plaintiff alleges that Defendant Whitten violated his Fourth Amendment right to be free from unreasonable search and seizure when he initiated an unfounded investigative detention of Plaintiff then, without probable cause, seized Plaintiff by grabbing him and threatening him with a taser. *See* Complaint at ¶¶ 58-66; Plaintiff's Response to Defendants' Motion for Summary Judgment at 2, 21-46 (Doc. 99). Plaintiff further alleges that Defendant Whitten continued to violate his rights protected by the Fourth Amendment when he used excessive force against him by tasing him in his genitals and hand. *See id*. Defendants, however, argue that Plaintiff cannot meet his burden under the two-prong qualified immunity analysis as to Count 1. *See* Defendant's Motion, Doc. 80 at 8-14. According to Defendants, Defendant Whitten's stop and seizure of Plaintiff was justified and his tasing of Plaintiff did not constitute excessive force. *Id.* at 9-14. Moreover, argue Defendants, Plaintiff has not shown that Defendant Whitten violated a constitutional right which was clearly established at the time of the incident. *Id.* at 14.

The Fourth Amendment provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ...." U.S. Const. amend. IV. There are "three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (citation and quotations omitted). Consensual encounters are not Fourth Amendment seizures. *Id*. "Both arrests

and investigatory stops, however, are seizures under the Fourth Amendment." *United States v. Reeves*, 524 F.3d 1161, 1166 (10th Cir. 2008) (citing *Terry v. Ohio,* 392 U.S. 1, 16–19 (1968)). "Investigative detentions . . . are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity." *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006). Arrests are reasonable only if supported by probable cause. *Id.*

### 1. The Initial Detention of Plaintiff

The Court finds that Plaintiff has met his burden of showing Defendant Whitten is not entitled to qualified immunity on the issue of his initial detention by law enforcement. First, viewing the evidence in the light most favorable to Plaintiff, and taking Plaintiff's allegations as true, Plaintiff has shown that Officer Whitten violated Plaintiff's Fourth Amendment rights because Officer Whitten did not have reasonable suspicion to perform an investigatory detention of Plaintiff. Defendant Whitten did not have specific and articulable facts that, taken together with *rational* inferences from those facts, could have reasonably led the officer to believe criminal activity was afoot.

More specifically, Defendant Whitten had no information to support a rational inference that Plaintiff had committed or was about to commit a crime. In Kristine Ledesma's request for a welfare check, she stated that she did not witness the verbal argument between Price and Lorenza. Kristine did not provide any information to law enforcement that Price had harmed anyone, committed a crime, or was going to commit a crime. When Defendant Whitten spoke with Lorenza, she stated she and Price were arguing, but he had left the car and gone walking, and she repeatedly stated she was "okay." Lorenza specifically told Defendant Whitten that she did not want police involved and did not provide a physical description of Price. Critically, even though Lorenza was the subject of the welfare check, Defendant Whitten never asked her if Price had

threatened her or hurt her. Even when Defendant Whitten encountered Price, there were no indications Price was violent, had committed a crime, or was going to commit a crime. As Price approached his residence, he lawfully ignored Defendant Whitten's questions and walked away. *See Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) ("[a] citizen has the constitutional right to walk away from a law enforcement officer who lacks probable cause or reasonable suspicion to detain or seize him."). Moreover, Price never exhibited violent or aggressive behavior with Defendant Whitten. Instead, he asked why Defendant Whitten was at his house, he communicated that he had no weapons, he did not exhibit pre-fight indicators, and when Price stepped into the street with his arms above his head, he told Defendant Whitten his movements were for witness visibility. Based on all of this, and viewed in the light most favorable to Plaintiff, Whitten did not have reasonable suspicion to believe Price was engaged in criminal activity to justify an investigative detention.

Defendants nevertheless argue that Defendant Whitten had sufficient reasonable suspicion based on the reporting caller's concern about the safety of her aunt, information that other calls for service from Plaintiff's resident involved custody disputes, welfare checks and threats, the reporting party's characterization of Plaintiff "going beserk" over the phone, and Officer Whitten's training and experience, which purportedly led him to suspect domestic abuse after speaking to Lorenza.

The Court rejects the notion that this information would have led a reasonable officer to reasonably suspect a crime had been committed or was about to be committed by Plaintiff. The reporting party's concern, the past calls from the residence, and the description of Plaintiff going "berserk" certainly would have justified a welfare check to the residence, but Defendants fail to sufficiently explain how this information would have led a reasonable officer to suspect Plaintiff

11

had committed a crime. As to the stated suspicion of domestic abuse based on his training and experience, Defendant Whitten does not provide a "specific and articulable factual basis" necessary to transform his hunch into objective reasonable suspicion, especially given the additional information provided to him by Lorenza regarding the argument she had with Price and the dearth of information connecting Defendant Whitten's training and experience and his suspicion of a crime involving domestic abuse or violence. *United States v. Davis,* 94 F.3d 1465, 1469 (10th Cir. 1996); *see also United States v. Dell,* 487 F. App'x 440, 446–47 (10th Cir. 2012) ("although we are compelled to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, there is little to defer to where the investigating officer demonstrates no connection between his training and experience and the suspicion of illegality") (internal quotations and citation omitted); *United States v. Arvizu*, 534 U.S. 266, 274 (an officer's reliance on a "hunch" is insufficient to justify a stop) (citing *Terry*, 392 U.S. at 27).

Second, it was clearly established as of July 27, 2020, that reasonable suspicion was necessary to perform an investigative detention. *See Cortez v. McCauley,* 478 F.3d 1108 (2007); *United States v. Sokolow*, 490 U.S. 1, 7, (1989); *Terry*, 392 U.S. at 1. Defendants argue that Plaintiff has failed to cite to any Tenth Circuit precedent that, given the facts of this case, would place the constitutional issues beyond debate. Therefore, assert Defendants, because Plaintiff cannot point to a case precisely analogous to the situation here, he cannot meet the second factor necessary to overcome Defendants' assertion of qualified immunity. The Court disagrees. As the Tenth Circuit reiterated just four months ago,

> Although "[a] Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right," *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018), "[t]here can also be 'the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing

12

precedent does not address similar circumstances,'" *Truman v. Orem City*, 1 F.4th 1227, 1235–36 (10th Cir. 2021) (quoting *Wesby*, 138 S. Ct. at 590). "After all, some things are so obviously unlawful that they don't require detailed explanation[,] and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) (quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015)); *see also id*. at 1211 ("[I]t would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." (quoting *Browder*, 787 F.3d at 1082–83)). Thus, qualified immunity does not protect an officer where the constitutional violation was so obvious under general well-established constitutional principles that any reasonable officer would have known the conduct was unconstitutional. *See Taylor v. Riojas*, ––– U.S. –––, 141 S. Ct. 52, 53–54, 208 L.Ed.2d 164 (2020) (per curiam).

*Rosales v. Bradshaw*, 72 F.4th 1145, 1156–57 (10th Cir. 2023).

In this case, the Court finds that the constitutional violation – the detention of Plaintiff without reasonable suspicion to believe he had committed a crime or was about to commit a crime – was so obvious under constitutional principles that had been well-established ever since the Supreme Court's decision in *Terry* over five decades ago, that any reasonable officer would have known the conduct was unconstitutional. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right") (internal quotations and citation omitted).

Because Plaintiff has carried his burden on qualified immunity, the burden shifts to the Defendants to show that there are no genuine factual issues and they are entitled to judgment as a matter of law. *Albright,* 51 F.3d at 1535. However, Defendants have not shown that there are no genuine factual issues. Therefore, the Court finds Defendant Whitten is not shielded by qualified immunity and summary judgment is not appropriate on the investigate detention issue within Count 1.

### 2. The Seizure of Plaintiff

Next, the Court considers whether Defendant Whitten unlawfully seized Plaintiff in violation of Plaintiff's constitutional rights.[4] Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has shown that Defendant Whitten violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures because Defendant Whitten did not have probable cause to seize Plaintiff. Probable cause is present when "a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citation and quotation marks omitted).

Taking the facts as Plaintiff has alleged them, Defendant Whitten did not have probable cause because there was not a substantial probability that Plaintiff had committed a crime at any time during Defendant Whitten's interaction with Plaintiff. Regarding probable cause to arrest Plaintiff for resisting, evading, and obstructing, Whitten did not give Price a lawful command prior to his arrest, and therefore there was also no probable cause for arrest under the state statute Plaintiff was charged with violating. *See* NMSA 1978 § 30-22-1(B) (attempting to evade an officer with knowledge that the officer is attempting to apprehend him). Importantly, Section 30-22-1(B) authorizes an arrest where a defendant has refused to comply with an officer's command, but only where the command was lawful. *See Ward v. City of Hobbs*, 398 F.Supp.3d 991, 1107 (D.N.M.), *appeal dism.*, No. 19-2137, 2019 WL 8064625 (10th Cir. Nov. 25, 2019) (citation omitted) ("The Supreme Court of New Mexico has stated that an officer who lacks reasonable suspicion to temporarily seize a defendant lacks the authority to detain the defendant pursuant to New Mexico's resisting statute § 30-22-1, because the defendant has a constitutional right to walk away from the

---

[4] Plaintiff has alleged multiple seizures during Defendant Whitten's interaction with Plaintiff, and unless noted otherwise, the Court's analysis applies to each of the seizures.

14

encounter."). "The Tenth Circuit has held that an officer must issue a lawful order before that officer has probable cause to arrest pursuant to the statute." *Id*. (citing *Storey v. Taylor*, 696 F.3d 987, 993 (10th Cir. 2012); *United States v. Romero*, No. CR 17-2190 KG, 2018 WL 1896551, at *7 (D.N.M. Apr. 19, 2018)). The Court agrees with the decision of the previous judge in this case that, "[b]ecause Whitten did not have reasonable suspicion to detain Price, he also did not have probable cause to arrest him, given that Price did not resist any lawful orders." [Doc. 24 at 9-11]; *see also Story*, 672 F.3d at 889 ("because we hold Defendants lacked reasonable suspicion to detain Plaintiff . . . Defendants lacked probable cause to arrest Plaintiff for flight or evasion under NMSA § 30-22-1(B), thereby violating Plaintiff's constitutional right to be free from unlawful arrest.").

Additionally, it was clearly established as of July 27, 2020, that probable cause was necessary for Office Whitten to seize and ultimately arrest Plaintiff. A police/citizen encounter that goes beyond the limits of a stop under *Terry v. Ohio* is an arrest which probable cause or consent must support to be valid. *See United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir.1993) ("An encounter between police and an individual which goes beyond the limits of a Terry stop, however, may be constitutionally justified only by probable cause or consent."). There is no question that it was clearly established that an officer cannot arrest an individual without probable cause. As the Tenth Circuit has explained,

> In the context of an unlawful arrest our analysis is simple, for the law was and is unambiguous: a government official must have probable cause to arrest an individual. New Mexico Statute Annotated § 30–22–1(B) is equally unambiguous: an officer must have probable cause or reasonable suspicion of a crime prior to the flight in order to arrest a person for flight or evasion. Accordingly, well-settled constitutional and state-law precedent would have put reasonable officers on notice that they lacked probable cause to effectuate an arrest.

*Romero*, 672 F.3d at 889–90 (internal citations and quotations omitted).

Because Plaintiff has carried his burden on qualified immunity, the burden shifts to the Defendants to show that there are no genuine factual issues and they are entitled to judgment as a matter of law. *Albright,* 51 F.3d at 1535. However, Defendants have not shown that there are no genuine factual issues and thus Defendants are not shielded by qualified immunity for Defendant Whitten's seizure and arrest of Plaintiff.

### 3. Excessive Use of Force

The Court now addresses Defendants' argument that Defendant Whitten's use of force against Plaintiff was constitutional and therefore he is entitled to qualified immunity. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has shown that Defendant Whitten use of a taser violated Plaintiff's rights under the Fourth Amendment. Excessive force claims under the Fourth Amendment are analyzed using the standard of objective reasonableness. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Under *Graham*, courts consider: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers; and (3) whether the suspect is actively resisting arrest or attempted to evade arrest by flight. 490 U.S. at 396. Here, the factors weigh heavily in favor of finding that Plaintiff has shown Defendant Whitten's use of force was not objectively reasonable. First, the Court already found that, viewing the evidence in the light most favorable to Plaintiff, Defendant Whitten did not have reasonable suspicion that Plaintiff had committed a crime and Plaintiff had not disobeyed any lawful orders. Thus, when Defendant Whitten decided to engage his taser, there was no crime at issue. Second, viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not pose an immediate threat to the safety of officers. At the time of the tasing, Plaintiff was 25 feet away from Defendant Whitten and just before being tased had his hands above his head. Moreover, prior to engaging Plaintiff, Defendant Whitten received no information that Plaintiff had hurt or threatened anyone.

Third, Plaintiff did not actively resist arrest or attempt to evade arrest by flight. The *Graham* factors all indicate that Defendants violated Plaintiff's Fourth Amendment right to be free from excessive force.

Finally, at the time of the tasing, it was "clearly established law in the Tenth Circuit that the use of disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016). *See also Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010) ("[The law] was clearly established on December 8, 2006 that Officer Davis could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning."); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("[W]hen an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law."). In sum, Plaintiff has carried his burden as to his excessive force claim and the burden shifts to Defendants to show there are no genuine factual issues such that they are entitled to judgment as a matter of law. *Albright,* 51 F.3d at 1535. However, Defendants have not shown that there are no genuine factual issues. Therefore, the Court finds that summary judgment on qualified immunity is not appropriate on the excessive force issue.

**B. Defendants' Motion for Summary Judgment as to Count 2 of Plaintiff's Complaint.**

Count 2 of Plaintiff's Complaint alleges that Defendant Whitten violated Plaintiff's Fourth Amendment rights by prosecuting Plaintiff without probable cause, including by adding false information in the officer's criminal complaint. Plaintiff alleges that Defendant Whitten untruthfully swore that he was responding to a "domestic" call, when he was actually dispatched for a welfare check. Defendant disagrees that Officer Whitten made any false statements in his

criminal complaint and that all the information provided in that complaint were materially accurate. The Court notes that Defendant does not raise qualified immunity in their argument regarding Count 2. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there are genuine disputes of material fact regarding Count 2 that preclude granting Defendants summary judgment on this claim. There is a genuine dispute as to whether the officer included false information in his criminal complaint. Therefore, the Court denies Defendants' Motion as to Count 2.

### C. Remaining Claims: State Law and *Monell* Claims

The Court now turns to the remaining claims. First, Defendants argue that the Family Violence Protection Act ("FVPA"), NMSA § 40-13-7, grants Defendants immunity from all of Plaintiff's state law claims because Defendant Whitten was dispatched to a request for assistance for domestic abuse. Plaintiff argues the FVPA is inapplicable to the facts of this case because, among other reasons, the individual who contacted law enforcement in this case, Kristine Ledesma, was not an alleged victim of domestic abuse and Kristine requested a welfare check, which the FVPA does not to cover. Having considered the arguments, the Court finds that the FVPA does not bar Plaintiff's state law claims based on the plain language of the statute. Section § 40-13-7(A) indicates that the FVPA applies to requests for assistance from persons who "allegedly has been a victim of domestic abuse." The statutory definition of "domestic abuse" does not include calls for a "welfare check," as was the case here. Defendants' request for the Court to dismiss Plaintiff's state law claims based on immunity under the FVPA is without merit.

Next, Defendants argue that Plaintiff's state law claims—malicious abuse of process, assault, battery, false arrest, and trespass—all fail. Defendants argue Plaintiff "cannot meet his evidentiary burdens for a state malicious abuse of process claim." Doc. 80 at 17. As to assault,

battery, and false arrest, Defendants argue that because Defendant Whitten had probable cause, Plaintiff's claims fail. As to the trespass claim, Defendants argue Plaintiff's claim cannot survive summary judgment because Defendant Whitten was conducting an investigation supported by reasonable suspicion and an arrest supported by probable cause, so the officer's presence in Plaintiff's driveway was not problematic. In response, Plaintiff argues, primarily, that Defendants did not cite to any undisputed material facts in their arguments to grant summary judgment on the state law claims.

The Court finds that Defendants have not met the standard for summary judgment because they have not shown that there is no genuine dispute of material fact on these claims. Viewing the factual record in the light most favorable to Plaintiff, the Court finds that genuine disputes of fact exist as to the state law claims. Defendants' request for summary judgment on the state claims is denied.

Finally, Defendants argue that because Defendant Whitten did not commit constitutional violations or intentional torts against Plaintiff, Plaintiff's derivative claims for municipal and supervisory liability should be dismissed. As to Count 5, the claim for municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), Plaintiff argue that Defendants fail to conduct any meaningful analysis supporting summary judgment and do not even mention the facts of this case. As to Count 4, the failure to intervene claim, and Count 12, the negligent supervision, retention, and training claim, Plaintiffs argue Defendants have not conducted an analysis nor shown the absence of a genuine dispute of material fact. The Court must agree with Plaintiff. Defendants have not shown they are entitled to summary judgment on these claims because they have not shown the absence of a genuine dispute of the material facts that pertain to these claims. Therefore, summary judgment is precluded.

## V.
## CONCLUSION

For all of the reasons stated above, Defendants' Motion will be denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds (Doc. 80) is **DENIED**.

**IT IS SO ORDERED**.

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE